UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RANDAL QURAN REID,

    Plaintiff,

v.

ANDREW BARTHOLOMEW, in his Individual Capacity as a Deputy of the Jefferson Parish Sheriff's Office, and JOSEPH P. LOPINTO, III, in his Individual and Official Capacity as Sheriff of the Jefferson Parish Sheriff's Office,

    Defendants.

CIVIL ACTION NO.
1:23-CV-04035-JPB

## ORDER

This matter is before the Court on Andrew Bartholomew's and Joseph P. Lopinto, III's (collectively, "Defendants") Motion to Dismiss [Doc. 12]. This Court finds as follows:

### BACKGROUND

In late-June 2022, four individuals walked into Second Act consignment store in Metairie, Louisiana with a stolen credit card and purchased several designer purses worth $12,500. [Doc. 1, pp. 17–18]. This case arises from the

Jefferson Parish Sheriff's Office's ("JPSO") false identification of Randal Quran Reid ("Plaintiff") as a suspect.

According to the Complaint, on June 30, 2022, the owner of Second Act notified JPSO that four unknown African American individuals had bought several purses with a stolen credit card. Id. Two JPSO deputies spoke with the owner, collected transaction receipts, watched surveillance footage, uploaded the footage to a USB drive and notified Sergeant Edward Urquhart of the incident. Id. at 19. Thereafter, Defendant Bartholomew—a JPSO detective—took on the investigation. Id. at 20.

The JPSO Economic Crimes Section's Incident Notification cited in the Complaint summarizes the investigation as follows:

> Detective Andrew Bartholomew was assigned the investigation. Detective Bartholomew reviewed the surveillance video and was able to utilize still photographs from the video to identify three of the four suspects. These subjects were positively identified as Ashton Malik Johnson (B/M, DOB: 02/22/1999), Randal Quran Reid (B/M DOB: 02/09/1994), and Armando Jacob Williams (B/M, DOB: 03/23/2001). Detective Bartholomew obtained arrest warrants for these suspects and is continually attempting to identify the fourth suspect.

Id. The report does not detail the method Bartholomew used to make these identifications, but Plaintiff avers he did so using Clearview AI's facial recognition software—a "facial identification service" that "compiles publicly available images from across the internet" to create a "searchable proprietary database." Id.

2

at 26–27; [Doc. 1-21].  Allegedly relying solely on Clearview AI's identification, Bartholomew drafted arrest warrant affidavits for Plaintiff and the other identified individuals and submitted them to Judge Paul Schneider of the 24th Judicial District Court of Jefferson Parish.  [Doc. 1, pp. 21–25].

According to the Complaint and its Exhibits, the affidavits made no mention of Bartholomew's reliance on facial recognition technology.  Id.  Instead, the affidavits stated that Bartholomew "was advised by a credible source" that the individual in the surveillance video was the individual identified in the affidavit.  Id.  Each affidavit also stated that upon searching the identified individual's name, Bartholomew found "DMV" records that "appeared to match the description of the suspect from the surveillance video." Id.  Judge Schneider issued arrest warrants for each of these suspects, including Plaintiff.  Id. at 20.  Plaintiff contends that this warrant led to a second warrant in East Baton Rouge Parish where police relied on the JPSO affidavit to connect Plaintiff to another similar incident.  Id. at 23.

Several months later, a DeKalb County police officer conducting random vehicle tag searches got a hit on Plaintiff's vehicle for the two Louisiana arrest warrants.  Id. at 12.  Allegedly, the officer pulled Plaintiff over, confirmed he was the man named in warrants and informed Plaintiff that he was wanted in Louisiana.  Id. at 13.  Plaintiff states he was puzzled because he had never been to Louisiana

before.  Id.  He told the officers as much to no avail.  Id.  He was arrested, transported to DeKalb County jail, booked and processed.  Id. at 14–15.  JPSO then sent a notice to DeKalb County police stating it "will extradite on this matter.  Advise when subject signs a waiver of extradition."  [Doc. 1-7].  After receiving the notice, a DeKalb County police officer drafted an affidavit and had Plaintiff charged as a fugitive from justice.  [Doc. 1, p. 17].  Plaintiff then signed a waiver of extradition and prepared to be transported to Louisiana.  Id.  The DeKalb County officer notified JPSO that Plaintiff was ready for pickup.  Id. at 15–16.

Meanwhile, Plaintiff's family hired a criminal defense attorney in Louisiana, who showed photos and videos of Plaintiff to JPSO that convinced the officers to withdraw the warrant.  Id. at 34.  According to the Complaint, JPSO stated it withdrew the warrant because the images showed Plaintiff had a mole unlike the man in the surveillance footage.  Id.  Plaintiff alleges that was only one of many apparent physical distinctions.  Id.

JPSO then notified DeKalb County police of the warrant's recission, noting that "after further investigation, it was learned that Randal Reid was not involved in the crimes committed."  Id. at 35.  While waiting in DeKalb County jail, Plaintiff states he could not eat or sleep, developed severe anxiety about his career and the false accusations and contracted salmonella gastroenteritis.  Id.

4

According to the Complaint, AI facial recognition has well-documented reliability issues, especially when used to identify African Americans. <u>Id.</u> at 27–29. Indeed, the Complaint includes a warning from Clearview AI against relying on the software as a sole basis for identification. <u>Id.</u> at 33. Plaintiff alleges Bartholomew used unreliable methods to identify Plaintiff and misleadingly concealed his methods in the affidavit. <u>Id.</u> at 36–43. Plaintiff further alleges that Defendant Lopinto—as Sheriff of JPSO—is derivatively liable and negligently failed to train officers or implement sufficient safeguards to combat the shortcomings of facial recognition technology. <u>See id.</u> at 43–50, 55–56. Plaintiff now brings various intentional and negligent tort claims against Bartholomew and Lopinto. <u>Id.</u> at 36–57.

Defendants move to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). [Doc. 8]. They argue exercising personal jurisdiction over either Defendant would violate both the Georgia long-arm statute and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. <u>Id.</u> Plaintiff requests the Court deny the Motion, arguing both jurisdictional requirements are satisfied because Defendants directed their conduct at and affected Georgia. [Doc. 9].

Alternatively, Plaintiff requests the Court transfer this case in lieu of dismissal. Id. at 24.

## LEGAL STANDARD

In cases where a defendant challenges the existence of personal jurisdiction, the plaintiff bears the initial burden of alleging in the complaint sufficient facts to make out a prima facia case of jurisdiction. Diamond Crystal Brands, Inc. v. Food Movers Int'l, 593 F.3d 1249, 1257 (11th Cir. 2010). In addition to this initial burden, if a defendant submits affidavit evidence in support of its position, the burden returns to the plaintiff to produce evidence supporting jurisdiction. Id. "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Id.

## ANALYSIS

Establishing personal jurisdiction over an out-of-state defendant involves a two-step inquiry. First, a court must determine "whether a forum state's long-arm statute permits service of process." Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1017 (Fed. Cir. 2009). Second, a court must analyze "whether an assertion of personal jurisdiction violates due process." Id. The Court addresses Georgia's long-arm statute first.

6

**I. The Georgia Long-Arm Statute**

The parties submit arguments under three distinct subsections of the Georgia long-arm statute, O.C.G.A. § 9-10-91. The statute reads in pertinent part:

> A court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:
>
> (1) Transacts any business within this state;
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

Courts are required to apply the specific limitations and requirements of the Georgia long-arm statute literally. Diamond Crystal Brands, 593 F.3d at 1263. As a result, the first subsection of the long-arm statute is satisfied if "the nonresident defendant has purposefully done some act or consummated some transaction in this state." Id. at 1260 (emphasis omitted). "[A] defendant need not physically enter the state" for this prong to be satisfied, and a defendant's "mail, telephone calls, and other 'intangible' acts, though occurring while the defendant is outside of Georgia, must be considered." Id. at 1264. "The only additional requirement is

7

that the cause of action arise out of the act or transaction that occurred in Georgia." Schmidt v. JPS Indus., Inc., No. 09-CV-3584, 2011 WL 1262165, at *2 (N.D. Ga. Mar. 31, 2011).  The second subsection requires that the alleged tortious act or omission actually occurred in the state.  See Anderson v. Deas, 632 S.E.2d 682, 683 (Ga. App. 2006).  An out-of-state act causing tortious injury within the state does not suffice under this provision.  Id.  Under the third subsection, tortious injury does suffice, but only if the tortfeasor, "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." See id. ("Where a person commits a tortious act outside this state causing injury in the state, paragraph (3) rather than (2) applies.").

      The Complaint does not provide a prima facie basis for exercising jurisdiction under any of these subsections.  The Court first addresses provisions (1) and (3).  Defendants argue that the Complaint is devoid of any "allegation that any Defendant ever entered Georgia or conducted any transaction in Georgia" or "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from . . . this state." [Doc. 8-1, pp. 15–16].  The Court agrees and finds the subsections do not support jurisdiction in this case.  Moreover, Plaintiff does not contend that jurisdiction is proper under these

provisions. [Doc. 9, p. 12] ("Defendants' arguments . . . are based largely on an erroneous understanding and interpretation of O.C.G.A. § 9-10-91. [Plaintiff is] not proceeding under paragraph (1) or (3) of O.C.G.A. § 9-10-91."). Instead, Plaintiff argues that O.C.G.A. § 9-10-91(2) is the provision that encompasses this action. Id. However, Plaintiff points to no part of his Complaint where Defendants or its agents committed a tortious act *in* Georgia.[1] He contends that Defendants share responsibility for the flawed investigation, affidavit submission and warrant publishing. But the Complaint is clear that those acts occurred in Louisiana, not Georgia. Accordingly, O.C.G.A. § 9-10-91(2) cannot apply.

For the above reasons, the Court finds it lacks jurisdiction over the Defendants under Georgia's long-arm statute. Because the Court lacks a statutory basis for jurisdiction, it need not consider whether it has a constitutional basis for jurisdiction.

---

[1] Plaintiff relies on outdated case law holding that O.C.G.A. § 9-10-91(2) applies any time tortious injury occurs in the state, even if the act or omission occurs outside of the state. E.g., Stacy v. Hilton Head Seafood Co., 688 F. Supp. 599, 604 (S.D. Ga. 1988). That is no longer the law in Georgia. Anderson, 632 S.E.2d at 683 ("[W]here a person commits a tortious act outside this state causing injury in the state, paragraph (3) rather than (2) applies." (citing Gust v. Flint, 356 S.E.2d 513 (Ga. 1987))).

**II. Transfer for Lack of Personal Jurisdiction**

Because the Court lacks jurisdiction over Defendants, it must consider Plaintiff's request for transfer in lieu of dismissal. Reynolds v. Behrman Cap. IV L.P., 988 F.3d 1314, 1325 (11th Cir. 2021). When a district court lacks personal jurisdiction over one or more of the defendants, it may, as an alternative to dismissal, transfer the case to any district in which it could have been brought. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 464–67 (1962); Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 992 n.16 (11th Cir. 1982) ("In this Circuit, a court lacking personal jurisdiction of the defendant may transfer the case under either § 1404(a) or § 1406(a)."); see also 28 U.S.C. §§ 1404(a), 1406(a). The Eleventh Circuit Court of Appeals has acknowledged the "long-approved practice" of permitting district courts to transfer cases—even *sua sponte*—so long as the parties are given notice and the opportunity to respond prior to transfer. See Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011).[2] Indeed, where another federal district court could properly hear the case, "[t]he interests of justice generally favor transferring [the] case to the appropriate judicial district rather than dismissing it." Hemispherx Biopharma, Inc. v. MidSouth Cap.,

---

[2] The Court ordered the parties to brief the issue of transfer and each party did so. [Doc. 15, p. 15]; [Doc. 19]; [Doc. 20].

Inc., 669 F. Supp. 2d 1353, 1359 (S.D. Fla. 2009). For that reason, if another federal court can hear a case, it is the "normal practice of courts in this Circuit [to] transfer[], as opposed to dismiss, the case." Basaran v. Martin Data LLC, No. 20-CV-03731, 2021 WL 7908647, at *11 (N.D. Ga. Aug. 5, 2021), R. & R. adopted, 2021 WL 7908642 (N.D. Ga. Aug. 24, 2021).

The Defendants oppose transfer on three primary grounds. First, Defendants argue Plaintiff failed to sufficiently request transfer. The Court is not persuaded because, even if Plaintiff entirely failed to request transfer, the Court may consider transfer *sua sponte*. Next, Defendants argue that 28 U.S.C. § 1404(a) is not a permissible basis to transfer this case because the Court lacks jurisdiction over Defendants. [Doc. 20, p. 8]. But the Eleventh Circuit acknowledges § 1404(a) as a permissible basis to transfer cases for lack of personal jurisdiction. See Roofing & Sheet Metal Servs., Inc., 689 F.2d at 992 n.16. Moreover, it is only one of multiple statutes the Court may use to transfer the instant action. Id. Defendants finally argue that transfer cannot be justified under any statute—namely, 28 U.S.C.

11

§§ 1404(a), 1406(a) or 1631[3]—because transfer is not in the interest of justice or convenient for the parties or witnesses. The Court disagrees.

The case may be transferred if it is in the "interest of justice" under 28 U.S.C. §§ 1406(a) and 1631. Section 1404(a) also permits transfer in the interest of justice, so long as it is also "[f]or the convenience of parties and witnesses." Because this Court lacks jurisdiction, it must dismiss or transfer to another federal court where the case could have been brought. Although Defendants contest transfer, it is clear to the Court that the United States District Court for the Eastern District of Louisiana could properly hear this case. Plaintiff presents federal claims and Defendants reside in that district. The Court finds no reason to "deviate from the normal practice of courts in this Circuit of transferring, as opposed to dismiss[ing], the case." Basaran, 2021 WL 7908647, at *11, R. & R. adopted, 2021 WL 7908642. In fact, as is generally the case, the Court finds the interest of justice is better served by transfer than dismissal. 28 U.S.C. §§ 1406(a), 1631. Additionally, transfer is convenient for the parties and witnesses. 28 U.S.C. §

---

[3] Some Circuits have held 28 U.S.C. § 1631 is the proper transfer provision for lack of personal jurisdiction, but the Eleventh Circuit continues to approve of 28 US.C. § 1406(a) transfers for lack of jurisdiction. Reynolds, 988 F.3d at 1325. Regardless, both § 1406(a) and 1631 use an "interest of justice" standard for transfer and are often both a viable basis for transfer. See Franco v. Mabe Trucking Co., Inc., 3 F.4th 788, 796 (5th Cir. 2021) ("A transfer conducted in these circumstances is not solely a § 1406(a) transfer or a § 1631 transfer. It is both.").

1404(a). Defendants reside in the potential transferee forum and Plaintiff prefers transfer over refiling in that forum. While some witnesses likely reside in Georgia, where the injury occurred, many others will likely reside in or near the transferee forum, where the alleged tortious acts took place. Accordingly, this Court finds the case should be **TRANSFERRED** to the Eastern District of Louisiana.

## CONCLUSION

For the foregoing reasons, the matter is hereby **TRANSFERRED** pursuant to 28 U.S.C. §§ 1406(a) and 1631 to the United States District Court for the Eastern District of Louisiana. Defendants' Motion to Dismiss [Doc. 12] is **DENIED AS MOOT**. The Clerk is **DIRECTED** to **TRANSFER** this action to the Eastern District of Louisiana and **CLOSE** this case.

**SO ORDERED** this 10th day of December, 2024.

*[Signature]*
**J. P. BOULEE**
United States District Judge